# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JORGE MARC GONZALEZ-BETANCOURT**

     **Petitioner,**

**v.**                                        **Case No. 8:18-cv-2916-WFJ-SPF**

**SECRETARY, Department of Corrections,**

     **Respondent.**

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Jorge Marc Gonzalez-Betancourt petitions for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 7) and challenges the validity of his state convictions for trafficking in oxycodone (16 counts), conspiracy to traffic in oxycodone (10 counts), actual or constructive possession of a place or structure with knowledge that it would be used for trafficking in illegal drugs (1 count), and participation in an enterprise through a pattern of racketeering activity (1 count), for which convictions Mr. Betancourt serves thirty years' imprisonment. The Respondent admits the petition's timeliness. (Doc. 14).

## Background and Procedural History[1]

Mr. Betancourt and his wife formed 1st Medical Group, a pain management clinic.  Mr. Betancourt and two co-defendants, including his wife, Michelle Gonzalez, were eventually charged with eighty-six offenses relating to the distribution of oxycodone at the clinic.[2]  A jury convicted Mr. Betancourt of thirty one charges.[3]  After considering Mr. Betancourt's post-trial motion for judgment of acquittal, new trial, and arrest of judgment, the trial court vacated two of the convictions and arrested judgment on one count. (Doc. 11-10, vol. 22 at 4244–4254).  Mr. Betancourt stands convicted of the twenty-eight remaining charges and serves thirty years' imprisonment.   The state appellate court affirmed Mr. Betancourt's convictions and sentences on direct appeal in a *per curiam* decision without elaboration.  (Doc. 11-29, Ex. 16).

---

[1] This factual summary derives from Mr. Betancourt's brief on direct appeal and the record. (Docs. 11-2 through 11-29). For citations to Exhibit 1 of docket entry 11, this Order refers to the page numbers stamped in the lower right-hand corner of each page in volumes 1–117.

[2] Before the criminal charges were filed, Mr. Betancourt was the subject of a civil forfeiture complaint brought under the Florida Contraband Forfeiture Act. Property and currency related to the clinic were seized. Following an adversarial probable cause hearing, the state court found no probable cause to support the seizure.  *See In re Forfeiture of: $221, 898 in U.S. Currency*, 106 So. 3d 47 (2013).

[3] The trial court entered a judgment of acquittal on fifty-five of the eighty-six charges. (Doc. 11-5 at 1877–1878).

## **Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Mr. Betancourt's petition. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United

States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (quoting *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the

objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694.  A federal court must afford due deference to a state court's decision.  "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt' . . . .") (citations omitted).  When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").  When the relevant state-court decision is not accompanied with

reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id*. "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id*.

As *Pinholster* explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward looking language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

563 U.S. at 181–82. Mr. Betancourt bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker*

*v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejection of Mr. Betancourt's post-conviction claims warrants deference in this case.

**Ground One**

Mr. Betancourt contends that the State presented insufficient evidence that he "had a conscious intent that the crime of trafficking in illegal drugs be committed [and] did something through word or act which caused or incited the offense to be committed."   (Doc. 7 at 5).  He argues that no witness testified that he "aided or abetted any unlawful activity" and that the "record is devoid of evidence that [he] had any agreement with any member of any of the charged conspiracy groups." (Id.).  Mr. Betancourt alleges that "[i]n the absence of any evidence of [his] criminal liability as a principal or as a co-conspirator, there is no evidentiary underpinning to support criminal liability for the 'drug house' count or the RICO count, and no reasonable juror could return a verdict of guilty beyond a reasonable doubt."  (Id.).

The Respondent opposes this ground as unexhausted because Mr. Betancourt neither preserved a federal constitutional claim at trial nor presented a federal constitutional claim to the state court on direct appeal.   (Doc. 11 at 7).   Mr. Betancourt replies that "[e]ven if [he] did not specifically argue to the state courts that his convictions violated her [*sic*] federally guaranteed right to due process of law, he exhausted that claim because his 'primary contention in the state court

proceedings was that [his] conviction[s] w[ere] based on insufficient evidence." (Doc. 15 at 15).  He further alleges that "the assertion of the fact that there . . . was no evidence at all presented against [him] evokes the constitutionally protected right articulated by *Jackson* [*v. Virginia*, 443 U.S. 307 (1979)]."  (Id. at 16).

Mr. Betancourt asserts in his memorandum that he exhausted his insufficiency of the evidence claim by raising it in the state courts in his Motion for Judgment of Acquittal (Doc. 11-10, Ex. 1, vol. 21 at 4105–4131), his Motion for New Trial, Judgment of Acquittal and in Arrest of Judgment (Doc. 11-10, Ex. 1, vol. 21 at 4142–4150), his Supplement to Motion for New Trial, Judgment of Acquittal, and in Arrest of Judgment (Doc. 11-10, Ex. 1, vol. 21 at 4157–4229), and his direct appeal brief (Doc. 11-29, Ex. 8 at 91–98).  The Respondent argues that this ground is unexhausted because Mr. Betancourt did not present a federal sufficiency of the evidence claim in the state court.

Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (C).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v.  Brewster*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal

constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  To exhaust a claim, a petitioner must present the state court with both the particular legal basis for relief and the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, a petitioner must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To

establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice, but that the error worked to his actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  In other words, a petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence—whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324.

A review of the record shows that although Mr. Betancourt raised this ground in the state courts, he argued only a violation of state law and did not assert a federal constitutional violation.   He did not cite a federal constitutional amendment or federal constitutional law nor did he label the ground "federal."   Consequently, Mr. Betancourt did not "fairly present" a federal constitutional violation to the state court.   *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas* "stand for the proposition that a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Mr. Betancourt's failure to present his federal insufficiency of the evidence claim to the state court deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845.  *See also Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law . . . cannot constitute fairly presenting a federal claim to the state courts"). Consequently, Ground One is unexhausted.   State procedural rules preclude Mr.

Betancourt from returning to state court to present his federal claim in either a second direct appeal or other collateral motion for post-conviction relief.  Mr. Betancourt's failure to properly exhaust his federal claim in the state court results in a procedural default.

Mr. Betancourt fails to demonstrate cause for the default of his federal claim because he fails to show that some "external factor" prevented him from raising the claim in state court.  *Wright*, 169 F.3d at 703.  He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because Mr. Betancourt satisfies neither exception to procedural default, Ground One is procedurally barred from federal review.

**Ground Two**

Mr. Betancourt contends that the doctrine of collateral estoppel should have barred his prosecution for criminal charges.  Mr. Betancourt alleges (Doc. 7 at 7):

> On July 26, 2010, before Petitioner was charged with a crime, the City of Tampa brought a civil forfeiture action against Petitioner and codefendants under Florida's Contraband Forfeiture Act. An adversarial probable cause hearing was held on August 27, 2010. At the hearing, the City of Tampa argued that currency which it seized was used to commit, or it was proceeds of, the identical crimes that were the subject of the criminal case against the Petitioner, and the factual evidence presented was identical to the evidence presented by the State in the criminal case against Petitioner. The trial judge found that there was no probable cause that any crime was

> committed. The binding judgment entered by the trial
> court in the forfeiture action was affirmed on appeal, thus
> resolving all ultimate facts in favor of Petitioner under a
> very low "probable cause" standard.

Citing *Ashe v. Swenson*, 397 U.S. 436 (1970), Mr. Betancourt argues in his memorandum that "[c]ollateral estoppel is a federal constitutional principle embodied in the double jeopardy clause of the Fifth Amendment to bar relitigation between the same parties in a future lawsuit when an issue of ultimate fact has been determined by a valid and final judgment." (Doc. 7-1 at 12).

Mr. Betancourt alleges that he exhausted this ground in the state court by (1) adopting his co-defendant's pretrial "Motion to Collaterally Estop State from Presenting Facts Contrary to the Facts Determined by Prior Final Judgment and which are Essential Elements of Any Crime Presently Charged (Doc. 11-10, Ex. 1, vol. 20 at 3875), (2) moving to adopt his co-defendant's direct appeal brief, (Doc. 11-29, Ex. 13), and (3) presenting the ground to the United States Supreme Court in a petition for writ of certiorari (Doc. 7-3). The Respondent argues that Mr. Betancourt did not exhaust this ground as a federal claim and that he did not litigate this ground on direct appeal because the ground was raised only in the co-defendant's brief. (Doc. 11 at 12).

The record shows that the state appellate court denied Mr. Betancourt's motion to adopt his co-defendant's appellate brief. (Doc. 11-29, Ex. 15). He did not raise this ground in his own direct appeal brief. Mr. Betancourt's presentation of

this ground to the United States Supreme Court in his petition for writ of certiorari does not satisfy 28 U.S.C. §2254 (b)(1)(A), which requires a petitioner to exhaust the remedies available in the state courts. *See, e.g., White v. Klitzkie*, 281 F.3d 920, 924 (9th Cir. 2002) (noting that "[a] petition for a writ of certiorari to the United States Supreme Court is simply not an application for state review"). Consequently, because Mr. Betancourt did not present his federal claim to the state court, Ground Two is unexhausted. State procedural rules preclude Mr. Betancourt from returning to state court to present his federal claim in either a second direct appeal or other collateral motion for post-conviction relief. Mr. Betancourt's failure to properly exhaust his federal claim in the state court results in a procedural default.

In his reply Mr. Betancourt does not challenge the Respondent's assertion of procedural default. Moreover, Mr. Betancourt fails to satisfy the cause and prejudice exception to overcome the default. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Mr. Betancourt satisfies neither exception to procedural default, Ground Two is procedurally barred from federal review.

**Ground Three**

Mr. Betancourt contends that the trial judge improperly excluded statements from Dr. Kimberly Daffern and Dr. Marina Kulick, two of the doctors employed by

14

1st Medical Group, who both gave sworn statements to the State before the criminal trial.  Mr. Betancourt alleges that both doctors "detailed the methodologies by which they diagnosed and treated 1st Medical patients, which established their exercise of independent judgment, and that their medical decisions were entirely uninfluenced by Petitioner."  (Doc. 7 at 8).  Mr. Betancourt argues that the trial judge's alleged error violated his "due process right to a fair trial."  (Id.).

Mr. Betancourt asserts that he exhausted this ground in the state court by moving to adopt the appellate brief of co-defendant Michelle Gonzalez "which expressly raised the issue of the unconstitutional exclusion of exculpatory evidence."  (Doc. 7-1 at 19).  The Respondent argues that this ground is unexhausted and procedurally barred because Mr. Betancourt did not raise this ground as a federal issue at trial and did not litigate this ground on direct appeal.  (Doc. 11 at 18).

Mr. Betancourt failed to present this ground to the state court in his direct appeal brief and his attempt to adopt the co-defendant's appellate brief was unsuccessful.  Consequently, he did not exhaust his federal claim in the state courts and cannot return to state court to present his federal claim in either a second direct appeal or other collateral motion for post-conviction relief.  Mr. Betancourt's failure to properly exhaust his federal claim in the state court results in a procedural default.

In his reply Mr. Betancourt does not challenge the Respondent's assertion of procedural default.  Mr. Betancourt fails to satisfy the cause and prejudice exception

to overcome the default and cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because Mr. Betancourt satisfies neither exception to procedural default, Ground Three is procedurally barred from federal review.

**Ground Four**

Mr. Betancourt contends that the trial judge violated his Sixth Amendment right to confront adverse witnesses by denying his motion to strike hearsay statements of the co-conspirators.  Mr. Betancourt argues in his memorandum that the trial judge "improperly admitted co-conspirator statements time and again . . . in reliance on the hearsay exception set forth at Florida Statute §90.803(18)(e)" and that "[t]hese evidentiary rulings of the trial court are not only unsupportable under Florida Statute; they also violate [Mr. Betancourt]'s Sixth Amendment right to confront adverse witnesses and are contrary to the Supreme Court's decision in *Crawford v. Washington*, [541 U.S. 36, (2004)]."  (Doc. 7-1 at 20).

Mr. Betancourt alleges that he exhausted this ground by "carr[ying] his numerous trial objections through one round of direct appeal." (Doc. 7-1 at 21).  The Respondent argues that this ground was not exhausted as a federal question because, although Mr. Betancourt challenged the admissibility of the co-conspirator's statements in his direct appeal, "[n]either *Crawford* nor any federal case is ever cited

in relation to confrontation issues." (Doc. 11 at 22). In his reply Mr. Betancourt does not challenge the Respondent's assertion of procedural default.

The record shows that although Mr. Betancourt challenged on direct appeal the trial judge's allegedly erroneous admission of hearsay statements, he argued only a violation of state law and did not assert a federal constitutional violation. (Doc. 11-29, Ex. 8 at 79–91). He neither alleged a federal constitutional claim, nor cited *Crawford* or *Hutchins* or a federal constitutional amendment, nor did he label the claim "federal." Consequently, Mr. Betancourt did not "fairly present" to the state court a Sixth Amendment Confrontation Clause claim. *See Baldwin*, 541 U.S. at 27; *Lucas,* 682 F.3d at 1352; *Preston*, 785 F.3d at 458.

Mr. Betancourt's failure to present his federal Confrontation Clause claim to the state court deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Consequently, Ground Four is unexhausted and procedurally defaulted because state procedural rules preclude Mr. Betancourt from returning to state court to present his federal claim in either a second direct appeal or other collateral motion for post-conviction relief.

Mr. Betancourt fails to satisfy the cause and prejudice exception to overcome the default and cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*,

513 U.S. at 327.  Because Mr. Betancourt satisfies neither exception to procedural default, Ground Four is procedurally barred from federal review.

**Ground Five**

Mr. Betancourt contends that "[t]he trial court improperly admitted evidence of collateral crimes, bad acts, and guilt-by-association evidence, in violation of [his] constitutional right to a fair trial and right to a presumption of innocence."  (Doc. 7 at 12).  He argues that the State presented multiple witnesses who did not know him or have knowledge of the crimes charged "to create a cumulative effect which bolstered the misimpression that every pain center should be presumed to traffic unlawfully in oxycodone and that every person associated with a pain center is engaging in criminal conduct."  (Id.).  Mr. Betancourt further alleges that "[t]he trial court abandoned its gatekeeping function with regard to the admissibility of expert testimony from persons who could not reasonably be regarded to satisfy the *Daubert* standard  which is required by Florida law."  (Id.).  Mr. Betancourt asserts that "the trial court allowed cumulative prejudicial testimony from experts who offered no scientific basis for their opinions" and that the "State's experts admitted to having no personal knowledge with respect to any of the allegedly unlawful methodologies of 1st Medical Group."  (Id.).  In his supporting memorandum Mr. Betancourt asserts as the constitutional bases for this ground the following cases:  *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *Taylor v. Kentucky*, 436 U.S. 478 (1978);

*Chambers v. Mississippi*, 410 U.S. 284 (1973); and *Kyles v. Whitley*, 514 U.S. 419 (1995).  (Doc. 7-1 at 22).

Mr. Betancourt alleges that he exhausted this ground by presenting it to the state court in his direct appeal brief.  The Respondent argues that a claim of cumulative error is unexhausted and procedurally barred because Mr. Betancourt did not raise such a claim in his direct appeal.  (Doc. 11 at 25).  In his reply Mr. Betancourt does not challenge the Respondent's assertion of procedural default.

The record shows that in his direct appeal brief Mr. Betancourt challenged the trial judge's admission of testimony by expert witnesses under state law. (Doc. 11-29, Ex. 8 at 70–79).  He did not present a federal constitutional challenge to the admission of the testimony nor did he raise a cumulative error claim in the state court, nor did he cite as a basis for relief any of the federal cases he now cites in his federal petition.  Consequently, Mr. Betancourt did not "fairly present" a federal constitutional violation to the state court, rendering his cumulative error claim unexhausted.  *See Baldwin*, 541 U.S. at 27; *Lucas*, 682 F.3d at 1352.  The failure to properly exhaust the federal claim in the state court results in a procedural default.   Mr. Betancourt fails to satisfy the cause and prejudice exception to overcome the default to demonstrate cause and prejudice to overcome the default and cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*, 513 U.S.

at 327.   Because Mr. Betancourt satisfies neither exception to procedural default, Ground Five is procedurally barred from federal review.

**Ground Six**

Mr. Betancourt contends that he "is actually innocent of all charges" and that "a review on the merits is necessary to prevent a fundamental miscarriage of justice." (Doc. 7 at 13).   Citing *McQuiggin v. Perkins*, 569 U.S. 383 (2013),   Mr. Betancourt argues in his memorandum that his is an "extraordinary case" in which he is entitled to a merits review of his procedurally defaulted grounds because "[n]ot only was the evidence grossly insufficient to prove guilt beyond a reasonable doubt for any charge for which [he] was convicted, the evidence actually proved his innocence."  (Doc. 15 at 18).   The Respondent argues that Mr. Betancourt "appears to be asserting a technical or legal innocence, not actual innocence" and that "by simply re-hashing all his other claims, Petitioner fails to specifically cite or set forth any new, reliable evidence demonstrating his actual innocence." (Doc. 11 at 26–27).  The Respondent further argues that this "conclusory claim amounts to another cumulative error claim." (Id. at 27).

A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is "actually innocent." *See Henderson*, 353 F.3d at 892.  Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court

may consider a defaulted constitutional claim. *Schlup*, 513 U.S. at 315. If a petitioner cannot show cause and actual prejudice to overcome the procedural default of a federal claim, he may still be able to circumvent the default if he can demonstrate that the failure to consider the merits of the claim would work a fundamental miscarriage of justice, resulting in the continued incarceration of one who is actually innocent. *See McQuiggin*, 569 U.S. at 387; *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To qualify under this exception, a petitioner must show that, in light of new evidence, no reasonable juror would have convicted him. *See McQuiggin*, 569 U.S. at 385 (quoting *Schlup*, 513 U.S. at 327). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally defaulted claim under the fundamental miscarriage of justice exception. *Schlup*, 513 U.S. at 316. This exception requires a petitioner to demonstrate actual innocence, not just legal innocence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013 (11th Cir. 2012) (*per curiam*).

Mr. Betancourt has not offered any new, reliable evidence showing his actual innocence and the trial record shows otherwise. Accordingly, he has not established that the fundamental miscarriage of justice exception applies to excuse the default of the federal claims raised in Grounds One through Five of his federal petition.

Because Mr. Betancourt has not shown that the procedural default should be excused, each ground in his federal petition is barred from federal habeas review.

Accordingly, Mr. Betancourt's amended petition for the writ of habeas corpus (Doc. 7) is **DENIED**.  The Clerk must enter a judgment against Mr. Betancourt and **CLOSE** this case.


## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Mr. Betancourt is not entitled to a certificate of appealability ("COA").  Under Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Mr. Betancourt must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Mr. Betancourt is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Mr. Betancourt must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** at Tampa, Florida, on March 31, 2022.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE